IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE ESTATE OF ALISSA MARIE ALLEN, et al., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 15-6273 (JBS-AMD) |
| v. | |
| CUMBERLAND COUNTY, A. GARCIA, RN, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Conrad J. Benedetto, Esq.
Melissa Yvette Hoffman, Esq.
LAW OFFICES OF CONRAD J. BENEDETTO
1814 East Route 70, Suite 350
Cherry Hill, NJ 08003
-and-
Danielle Marie Key, Esq.
John E. Kusturiss, Jr., Esq.
LAW OFFICES OF CONRAD J. BENEDETTO
1405 Chews Landing Road, Suite 21
Laurel Springs, NJ 08021
        Attorneys for the Plaintiffs

Daniel Edward Rybeck, Esq.
John C. Eastlack, Jr., Esq.
Lilia Londar, Esq.
WEIR & PARTNERS, LLP
215 Fries Mill Road, Second Floor
Turnersville, NJ 08012
-and-
Stephen D. Holtzman, Esq.
Jeffrey S. McClain, Esq.
HOLTZMAN & MCCLAIN, PC
524 Maple Avenue, Suite 200
Linwood, NJ 08221
        Attorneys for Defendant A. Garcia, RN and non-party CFG
        Health Systems

A. Michael Barker, Esq.
Vanessa Elaine James, Esq.
BARKER, GELFAND, JAMES & SARVAS
210 New Road, Suite 12
Linwood, NJ 08221
     Attorneys for Defendant Corrections Officer Melanie Loatman


**SIMANDLE, District Judge:**

This matter comes before the Court on four separate motions: (1) Plaintiff's Motion for Leave to File a Second Amended Complaint [Docket Item 61]; (2) Defendant Corrections Officer Melanie Loatman's responsive Cross-Motion to Dismiss [Docket Item 66]; (3) Plaintiff's Motion for Leave to File a Third Amended Complaint [Docket Item 81] to add CFG Health Systems as an additional defendant; and (4) Defendant Amber Garcia, RN's responsive Motion for Sanctions [Docket Item 89].

On August 18, 2015, Plaintiff Christine Allen, both as the administrator of the estate of Alissa Marie Allen and in her own right, filed a complaint in this Court against several defendants, alleging a variety of claims arising from the unfortunate death of Alissa Allen on March 22, 2015 in the Cumberland County Jail. [Docket Item 1.] The First Amended Complaint was filed with leave of the Court on February 8, 2016. [Docket Item 14.]

Plaintiff seeks to file the Second Amended Complaint to state a claim against Defendant Loatman ("Loatman") with additional factual allegations so as to state a plausible claim that Loatman bears liability in this case. [Docket Item 61.] In response, Loatman opposes the motion on the grounds that amendment would be futile as the Second Amended Complaint does not state a claim against Loatman [Docket Item 65]. Loatman also cross-moves for dismissal of the First Amended Complaint [Docket Item 66] on the same grounds and relying on the same brief [Docket Item 65]. Plaintiff filed a Response in Opposition to the Cross-Motion to Dismiss [Docket Item 72]; Loatman filed a Reply [Docket Item 73].

Separately, Plaintiff seeks to file the Third Amended Complaint (incorporating the additional allegations against Loatman), which adds allegations and claims against CFG Health Systems, Inc. ("CFG"), the healthcare company that allegedly contracted with Cumberland County to provide medical services at the Cumberland County Jail and employed Defendant Amber Garcia, RN ("Garcia"). [Docket Item 81.] Defendant Garcia and non-party CFG filed a Response in Opposition [Docket Item 82]; Plaintiffs did not submit a Reply.

In further response to Plaintiff's Motion to File the Third Amended Complaint, Defendant Garcia filed a Motion for

Sanctions. [Docket Item 89.] Plaintiff filed a Response in Opposition [Docket Item 98], and Garcia filed a Reply [Docket Item 99].

The Court will first address the proposed Second Amended Complaint with regard to Loatman, and then the proposed Third Amended Complaint alongside the Motion for Sanctions.

For the reasons discussed below, the Court will deny without prejudice the Motion for Leave to File the Second Amended Complaint; grant the Cross-Motion to Dismiss the First Amended Complaint; deny the Motion to File the Third Amended Complaint; and deny the Motion for Sanctions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises out of the death of Alissa Marie Allen on March 22, 2015 in the Cumberland County Jail. Her mother, as administrator of Ms. Allen's estate and in her own right, is the named plaintiff in this action. Plaintiff claims that "Defendants violated the rights of Alissa Marie Allen by failing to keep her in a safe and secure environment where she could be kept free from injury, harm, and death, and by failing to provide her with adequate medical care and attention, in violation of the Eighth Amendment to the United States

Constitution." [Docket Item 62, Proposed Second Amended Complaint ("SAC"), ¶ 2.]

## A. Factual Background and Allegations

On March 20, 2015, Ms. Allen was arrested by Millville, New Jersey police officers who transported her to and booked her into the Cumberland County Jail in the early morning hours of March 21, 2015. [Docket Item 14 at ¶¶ 14-15.] Plaintiff alleges that Garcia and Loatman, among other jail personnel, "were required to screen Ms. Allen not only for any physical problems, but also to determine if Ms. Allen presented a risk for any psychological problems, including suicide[,]" and "had a legal duty to maintain a safe and suitable environment where Alissa Marie Allen could be kept free from injury, harm and death." [SAC ¶¶ 15-16.]

Plaintiff alleges that Loatman "was the only correction officer assigned to A-Pod where the decedent was housed at the Cumberland County Jail during the overnight period on March 22, 2015." Id. ¶ 17. Plaintiff alleges that Loatman began her shift at approximately 12:35 AM on March 22, 2015; performed an initial check of the inmates on A-Pod (including the decedent) at approximately 12:40 AM, which took about five minutes. Although the policy and procedures of the Cumberland County Jail required that Loatman check the inmates every thirty minutes,

Loatman failed to perform any checks (or rounds) of the inmates in A-Pod for approximately five hours in the early morning of March 22. Id. ¶¶ 18-21.

At approximately 5:00 AM, "Loatman assembled the diabetic inmates and hydration inmates, those inmates who were brought into the jail under the influence of drugs or alcohol, housed in A-Pod and brought those inmates to the jail's medical unit." Id. ¶ 22. Although Ms. Allen was placed "on hydration upon her initial intake" at the jail on March 20, 2015 (and had previously been placed on hydration during a previous incarceration at the jail "several days to a week before March 22, 2015"), Loatman failed to check whether Ms. Allen was on hydration and did not bring her with the other hydration inmates. Id. ¶¶ 23-25.

When Loatman arrived at the medical unit, she was informed that Ms. Allen "was on hydration and needed to be brought to the medical unit"; accordingly, at approximately 5:15 AM, Loatman "went to retrieve Ms. Allen" from her cell to take her to the medical unit for hydration and there observed her "hanging in her jail cell." Id. ¶¶ 26-28. An on-duty nurse pulled Ms. Allen out of her cell at approximately 5:35 AM and tried to revive her with CPR. Id. ¶ 29. Tragically, Ms. Allen was unable to be revived. Id.

Plaintiff further notes that emergency medical personnel responding to a report of "cardiac arrest" reported Ms. Allen "'to have cool and mottled skin. Bruising consistent with Lividity, noted in the legs, however BLS was unaware if Lividity was in fact, present.'" Id. ¶¶ 30-31. Ms. Allen was pronounced dead at the scene; her death certificate identified the "immediate cause" of her death as "Hanging." Id. ¶¶ 32-33.

Plaintiff also alleges that, as "a result of the events of March 22, 2015, Defendant Loatman was suspended for 20 days on charges of violating CCDOC Policy 3.02A, negligence in performing duty; resulting in injury to persons or damage to property"." Id. ¶ 34. An incident report relating to the suspension addressed to Loatman stated, "'On March 22, 2015 you failed to make physical checks every 30 minutes stated in the General Post Orders. An inmate was found hanging and unresponsive in her cell, resulting in her death. You had not physically and visually checked on her in four hours and 50 minutes.'" Id. ¶ 35.

Plaintiff claims that Loatman (among others) "failed to properly screen Alissa Marie Allen for any suicidal tendencies, or any other psychological problems, and also failed to properly monitor Alissa Marie Allen" thereby "breach[ing] their legal duty to maintain a safe and suitable environment[,]" acting to

deprive Ms. Allen of "her rights, privileges, and immunities secured by the Eighth and Fourteenth Amendments[.]" Id. ¶¶ 36-37.

Plaintiff claims that Loatman is liable for federal constitutional violations (Second Claim for Relief, id. ¶¶ 45-51); violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq. (Fourth Claim for Relief, SAC ¶¶ 58-61); wrongful death (Fifth Claim for Relief, id. ¶¶ 62-67); and survival action (Sixth Claim for Relief, id. ¶¶ 68-73).

## B. Procedural Background

Plaintiff filed the initial complaint in this action on August 18, 2015, against Cumberland County, Warden Robert Balicki, and John Doe Corrections Officers 1-50. [Docket Item 1.]

On November 15, 2015, the Cumberland County Defendants served their initial disclosures on Plaintiff, including, inter alia, medical and intake records signed by Garcia, some of which included the name and/or logo of CFG. [Docket Item 82 at 4.]

On January 18, 2016, Plaintiff filed a motion for leave to file an amended complaint [Docket Item 12], which was granted on February 3, 2016 [Docket Item 13]. The First Amended Complaint was filed on February 8, 2016; in addition to Cumberland County and Warden Balicki, it named Garcia, eight corrections officers,

and John Doe Corrections Officers 9-50 as defendants. [Docket Item 14.]

Garcia's initial disclosures, including a certificate of insurance coverage naming CFG as the insured and the Cumberland County Jail as the certificate holder, were served on Plaintiff on May 11, 2016. [Docket Items 82 at 5, 82-5 at 4.] No medical defendants beside Garcia were ever impleaded as defendants; nor were any medical defendants or employees or agents of CFG ever impleaded as John Does.

On December 9, 2016, this case was consolidated for discovery purposes only with three additional cases involving suicides in the Cumberland County Jail: Estate of Hennis v. Cumberland County, 16-cv-4216 ("Hennis"); Estate of Lewis v. Cumberland County, 16-cv-3503 ("Lewis"); and Estate of Watson v. Cumberland County, 16-cv-6578 ("Watson"). [Docket Item 57.] Plaintiff's counsel is the counsel of record for the plaintiffs in each of the foregoing cases.

On November 15, 2016, the plaintiff in Lewis filed a motion to amend the complaint to add CFG as a defendant. [Lewis, Docket Item 18.] The motion was granted and the complaint was filed on December 16, 2016. [Lewis, Docket Items 22 & 26.]

On December 19, 2016, the plaintiff in <u>Watson</u> filed an amended complaint naming CFG as a defendant (without seeking leave of the court to amend). [<u>Watson</u>, Docket Item 19.]

Also on December 19, 2016, the plaintiff in <u>Hennis</u> filed a motion to amend the complaint to name CFG as a defendant. [<u>Hennis</u>, Docket Item 23.] That motion was granted on January 5, 2017 [<u>Hennis</u>, Docket Item 24] and the amended complaint filed on January 11, 2017 (albeit not served on CFG until June 8, 2017) [<u>Hennis</u>, Docket Item 25].

Also on December 19, 2016, Plaintiff's counsel conducted the deposition of Garcia. [Docket Item 82-6.] Garcia testified that she worked for CFG as a registered nurse at the Cumberland County Jail from March of 2014 to either March or November of 2015. <u>Id.</u> at 4-5.

The Court previously issued an Opinion and Order granting partial summary judgment to Garcia on the claims of professional negligence because Plaintiff failed to file an affidavit of merit within the statutorily-prescribed time period under New Jersey Law. <u>Estate of Allen v. Cumberland County</u>, 262 F. Supp. 3d 112 (D.N.J. 2017) [Docket Items 83 & 84].

On June 22, 2017, Plaintiff filed a Third Motion to Amend or Correct the Complaint "to include CFG Health Systems, LLC as a Defendant in the litigation." [Docket Item 81-1 at 2.] The

proposed Third Amended Complaint ("TAC") [Docket Item 81-2]
states that "CFG Health Systems, LLC ('CFG'), with corporate
offices located at 765 East Route 40, Building A-101, Marlton,
NJ 08053, contractually provides health care services to inmates
at the Cumberland County Jail." [TAC ¶ 12.] The TAC then
includes allegations that "representatives and/or employees of
CFG" "were required to screen Ms. Allen not only for any
physical problems, but also to determine if Ms. Allen presented
a risk for any psychological problems, including suicide,"
"failed to properly screen Alissa Marie Allen for any suicidal
tendencies, or any other psychological problems, and also failed
to properly monitor Alissa Marie Allen[,]" thereby depriving her
of her constitutional rights and constituting deliberate
indifference. [TAC ¶ 16, 37-39.] She includes CFG and/or its
"representatives and/or employees" in her second [federal
constitutional violations, TAC ¶¶ 46-52], fourth [New Jersey
Civil Rights Act, TAC ¶¶ 59-62], fifth [wrongful death, TAC
¶¶ 63-68], sixth [survival action, TAC ¶¶ 69-74], and seventh
[negligence, TAC ¶¶ 75-79] claims for relief.

Defendant Garcia[1] filed a brief in opposition to the motion to file the TAC, in which she states that CFG was her "employer" "at all times relevant." [Docket Item 82 at 6.]

CFG subsequently filed the Motion for Sanctions pursuant to Fed. R. Civ. P. 11 [Docket Item 89], to which Plaintiff eventually filed a Response in Opposition [Docket Item 98] and CFG filed a Reply [Docket Item 99].[2]

## II. STANDARD OF REVIEW[3]

Federal Rule of Civil Procedure 15(a) permits a party to amend his pleading before trial as a matter of course in limited circumstances, or otherwise with the consent of the opposing party or the court's leave. Plaintiff filed his Motion to Amend 27 days after Defendant's Motion to Dismiss, and was therefore not within the 21-day window to amend as of right under Federal Rule of Civil Procedure 15(a)(1). Rule 15(a)(2) permits

---

[1] The Certification of Counsel attached to the brief in opposition states that Attorney McClain is the Attorney "for Defendant CFG Health Systems, LLC" [Docket Item 82-1 at 5]; although Attorney McClain also represents Garcia, CFG is not currently a party to this action.

[2] Although CFG is, as stated supra, not a party, the Motion for Sanctions purports to be filed by CFG by and through Attorney McClain. The docket sheet, however, reflects that Garcia filed the Motion for Sanctions and the Reply.

[3] The Court exercises jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343(3) and pendent jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

Plaintiff to amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Although "[t]he court should freely give leave when justice so requires," id, the decision to grant leave to amend a complaint rests within the sound discretion of the trial court. Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983). The district court may deny leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party; or (b) the amendment would be futile, meaning that the complaint, as amended, would fail to state a claim upon which relief could be granted. Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

In assessing "futility," the court applies the same standard of legal sufficiency as applies under Fed. R. Civ. P. 12(b)(6). Shane, 213 F.3d at 115. In other words, the amended complaint must be dismissed (or leave to amend ought not be granted) if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff has failed to set forth sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly,

550 U.S. 544 (2007); <u>Fleisher v. Standard Ins. Co.</u>, 679 F.3d 116, 120 (3d Cir. 2012). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

### A. Proposed Second Amended Complaint and Cross-Motion to Dismiss First Amended Complaint as to Loatman

Plaintiff seeks to file a Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a) "that states with additional specificity the allegations against Defendants in the litigation," and avers that "there has not been undue delay, the existing defendants would not be prejudiced, and amending the Complaint would not be futile." [Docket Item 61-1 at 2.] Plaintiff states that only a few months passed between the time when Plaintiff was "permitted to file any amendments to the Complaint in line with the Court's scheduling Order" and when she filed the instant motion; that she does not raise any additional allegations against Defendants Cumberland County, Warden Balicki, Garcia, and the individual Corrections Officers; and that the proposed SAC "contains actionable claims against

the same Defendants as in the original Complaint and the First Amended Complaint" and "[t]hose claims are not futile." Id. at 3.

Loatman opposes the motion for leave to file the SAC on the grounds that amendment would be futile, as the SAC's "proposed amendments do not allege facts sufficient to overcome a R. 12(b)(6) motion to dismiss." [Docket Item 65 at 8.]

Loatman argues, first, that the SAC "does not allege that the decedent Allen had any history of psychological [problems] or suicidal tendencies that should have been detected. . . . Plaintiff's entire case is premised upon the assumption that because the decedent committed suicide, there must have been something the defendants did wrong; to support the assumption, Plaintiff does not allege one thing that any of the defendants did wrong in the screening of Allen. Plaintiff only alleges that the Defendants did the screening 'improperly.' This is the very kind of 'naked assertion' that Ashcroft protects against." Id. at 10-11.

Loatman next argues that the allegations that the Defendants failed to properly screen and failed to properly monitor Ms. Allen fail to state a claim against Loatman, as "Plaintiff alleges the same conduct from nine named defendants plus numerous John Doe defendants." Id. at 12. Loatman contends

that this renders these claims inadequate, citing <u>Zampetis v.</u>
<u>City of Atlantic City</u>, No. 15-1231 (NLH), 2015 U.S. Dist. LEXIS
169997, at *8-*12 (D.N.J. Dec. 21, 2015), and arguing that
"Plaintiff's failure to specify, at least to some extent, which
defendant was responsible for what i[s] fatal to Plaintiff's
case." [Docket Item 65 at 12-14.]

Loatman then argues that, while the proposed SAC alleges
that Loatman had no part in the screening of the decedent but
does allege that Loatman failed to monitor her, the SAC fails to
state a claim against her for constitutional violations against
the decedent for failure to monitor her because such failure
does not rise to the level of deliberate indifference as is
required under precedential case law. <u>Id.</u> at 15-18. Because of
this, she argues, the constitutional violations pled by
Plaintiff in the SAC against Loatman fail to state a claim,
rendering amendment futile, and the Court should deny Plaintiff
leave to amend to file the SAC. <u>Id.</u> at 18.

Loatman finally argues that, because the pleadings in the
FAC are even weaker than those in the SAC, "any and all claims
against Loatman by Plaintiff in Plaintiff's First Amended
Complaint should be dismissed, with prejudice, pursuant to
F.R.C.P. 12(c)[,]" as "[u]nder a R. 12(c) motion, the same
standards as a R. 12(b)(6) motion for failure to state a claim

are applied. <u>See</u>, <u>e.g.</u>, <u>Turbe v. Gov't of V.I.</u>, 938 F.2d 427, 428 (3d Cir. 1991)." [Docket Item 65 at 19.]

In response, Plaintiff argues that "Loatman, through her previous encounter with decedent Allen and her interaction with other corrections officers and medical staff at the Cumberland County Jail, knew that decedent Allen was suffering from drug withdrawal and needed to be more closely monitored as she was on hydration." [Docket Item 72 at 16.] Loatman's failure to check on the decedent for almost five hours coupled with her "entries in the Log Book every half hour that everything was fine[,]" Plaintiff claims, "is exactly the kind of deliberate indifference, i.e., disregard of an excessive risk to an inmate's health or safety that support[s] Plaintiff's claims against Defendant Loatman." <u>Id.</u>

In reply, Loatman reiterates that, notwithstanding the allegations that Loatman was deliberately indifferent to the decedent's hydration needs and drug withdrawal, the "pleadings do not establish Loatman had any information regarding any suicide risk for Allen[,]" as Plaintiff conceded the case law requires. [Docket Item 73 at 10.]

"The [Eighth] Amendment[4] . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994)(citing Hudson v. Palmer, 468 U.S. 517, 526-37 (1984)). "Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834 (internal quotations and

_____

[4] The decedent in this case, as a pre-trial detainee, was not protected by the Eighth Amendment, under the prevailing view, because "the most accepted view" holds that "the amendment's proscription applies only after conviction." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1079 (3d Cir. 1976). Rather, her claim is properly grounded in the Due Process Clause of the Fourteenth Amendment. Id. at 1080. "[T]he Due Process rights of a pretrial detainee are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987)(citing City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983)). See also Palakovic v. Wetzel, 854 F.3d 209, 222 (3d Cir. 2017). Accordingly, the Court analyzes her Due Process claim within the analytic framework provided by Eighth Amendment jurisprudence.

citations omitted). "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" Id. (citing, inter alia, Estelle v. Gamble, 429 U.S. 97, 106 (1976)(further citations omitted)). See also Wilson v. Seiter, 501 U.S. 294, 303 (1991)(applying "deliberate indifference" standard of Estelle to claims alleging inadequate non-medical conditions of confinement as well as claims alleging inadequate medical care).

"In the Eighth Amendment context, 'deliberate indifference' is 'a subjective standard of liability consistent with recklessness as that term is defined in criminal law.' Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)(en banc). A prison official is deliberately indifferent if the official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' Chavarriaga [v. New Jersey Dep't of Corrs.], 806 F.3d [210,] 229 [(3d Cir. 2015)]." Parkell v. Danberg, 833 F.3d 313, 335 (3d Cir. 2016).

"A plaintiff may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that the defendants must have known about the risk. But the plaintiff must show that the officials were aware of facts from which the inference could be drawn that a substantial risk of harm exists, and that they also drew the inference. It is not enough merely to find that a reasonable person would have known, or that the defendant should have known." Id. (citations omitted). "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985)(internal quotations omitted).

In the context of an Eighth Amendment claim regarding a prisoner's medical needs, "a failure to provide adequate care that was deliberate, and motivated by non-medical factors is actionable under the Eighth Amendment, but inadequate care that was a result of an error in medical judgment is not." Parkell, 833 F.3d at 337 (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993))(internal quotations omitted).

A constitutional claim based on a prison or its official's failure to prevent a detainee's suicide can be analyzed within

this rubric. "[A] vulnerability to suicide claim . . . is simply a more specific articulation of the Eighth Amendment rule that prison officials must not be deliberately indifferent to a prisoner's serious medical needs[.]" Mullin v. Balicki, 875 F.3d 140, 158 (3d Cir. 2017)("Mullin II"). However, "[w]e cannot infer from the prisoner's act of suicide itself that the prison officials have recklessly disregarded their obligation to take reasonable precautions to protect the safety of prisoners entrusted to their care." Freedman v. City of Allentown, Pa., 853 F.2d 1111, 1115 (3d Cir. 1988).

The Third Circuit has held that

> when a plaintiff seeks to hold a prison official
> liable for failing to prevent a detainee's suicide, a
> pre-trial detainee may bring a claim under the Due
> Process Clause of the Fourteenth Amendment that is
> essentially equivalent to the claim that a prisoner
> may bring under the Eighth Amendment. Thus, whether a
> pre-trial detainee or a convicted prisoner, a
> plaintiff must show: (1) that the individual had a
> particular vulnerability to suicide, meaning that
> there was a 'strong likelihood, rather than a mere
> possibility,' that a suicide would be attempted; (2)
> that the prison official knew or should have known of
> the individual's particular vulnerability; and (3)
> that the official acted with reckless or deliberate
> indifference, meaning something beyond mere
> negligence, to the individual's particular
> vulnerability.

Palakovic v. Wetzel, 854 F.3d 209, 223-24 (3d Cir. 2017)(citing Colburn v. Upper Darby Twp., 838 F.2d 663, 669 (3d Cir. 1988)("Colburn I"); Colburn v. Upper Darby Twp., 946 F.2d 1017,

1023 (3d Cir. 1991)("_Colburn II_"); and _Woloszyn v. Cty. of Lawrence_, 396 F.3d 314, 319-20 (3d Cir. 2005)).

This test "rest[s] primarily upon the Supreme Court's decision in _Estelle v. Gamble_" holding that deliberate indifference to a serious medical need constitutes a violation of the Eighth Amendment and that a "particular vulnerability to suicide represents a serious medical need." _Woloszyn_, 396 F.3d at 319-20.

As to the first element, "[t]he requirement of a particular vulnerability to suicide speaks to the degree of risk inherent in the detainee's condition. There must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." _Id._ at 320 (citing _Colburn II_, 946 F.2d at 1023-24)(internal quotations omitted). More recently, the Third Circuit has commented that "[o]ur statements in _Woloszyn_ and _Colburn II_ requiring a plaintiff to demonstrate a 'strong likelihood' of self-harm were never intended to demand a heightened showing at the pleading stage by demonstrating . . . that the plaintiff's suicide was temporally imminent or somehow clinically inevitable. A particular individual's vulnerability to suicide must be assessed based on the totality of the facts presented." _Palakovic_, 854 F.3d at 230.

As to the second element, the Third Circuit stated:

However, even where a strong likelihood of suicide
exists, it must be shown that the custodial officials
knew or should have known of that strong likelihood.
It is not necessary that the custodian have a
subjective appreciation of the detainee's particular
vulnerability. Nevertheless, there can be no reckless
or deliberate indifference to that risk unless there
is something more culpable on the part of the
officials than a negligent failure to recognize the
high risk of suicide. Therefore, the "should have
known" element does not refer to a failure to note a
risk that would be perceived with the use of ordinary
prudence. It connotes something more than a negligent
failure to appreciate the risk of suicide presented by
a particular detainee, though something less than
subjective appreciation of that risk. The strong
likelihood of suicide must be so obvious that a lay
person would easily recognize the necessity for
preventative action; the risk of self-inflicted injury
must not only be great, but also sufficiently apparent
that a lay custodian's failure to appreciate it
evidences an absence of any concern for the welfare of
his or her charges.

Woloszyn, 396 F.3d at 320 (quoting Colburn II, 946 F.2d at 1024-

25)(internal quotations and citations omitted). See also

Palakovic, 854 F.3d at 230-31 (custodian need not have actually

known about detainee's particular vulnerability). This level of

culpability is what is meant by "deliberate indifference" or

"reckless indifference." Woloszyn, 396 F.3d at 321 (citing

Estelle, 429 U.S. at 104 and Farmer, 511 U.S. at 835). "A

factfinder may determine the actor's knowledge through

'circumstantial evidence' or 'may conclude that [an actor] knew

of a substantial risk from the very fact that the risk was

obvious.'" Aughenbaugh v. DeJulia, No. 3:09-cv-159, 2013 WL

12293453, at *9 (W.D.Pa. Mar. 27, 2013)(quoting Farmer, 511 U.S. at 842). The Third Circuit, discussing Farmer, has stated that "Farmer anticipated that a plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation: '[I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.'" Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001)(quoting Farmer, 511 U.S. at 842-43 (further internal quotations omitted)).

As to the third element, when assessing whether a defendant showed deliberate indifference to a detainee's risk of or vulnerability to suicide, the Third Circuit has looked to the definition of that term deriving from Farmer, 511 U.S. at 837, which requires that the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn

24

that a substantial risk of serious harm exists, and he must also draw the inference." See also Urrutia v. Harrisburg Cty. Police Dep't, 91 F.3d 451, 456 (3d Cir. 1996); Vargo ex rel. Vargo v. Plum Borough, 376 Fed. App'x 212, 216 (3d Cir. 2010)("Finally, the third prong recognizes that there must be a link between the prison official's knowledge and his disregard of the prisoner's particular risk. Although we have not developed the exact contours of the third prong, we have suggested that it is similar to the 'deliberate indifference' standard applied to a claim brought under the Eighth Amendment, which requires the plaintiff to prove that the prison official 'know[s] of and disregard[s] an excessive risk to inmate health and safety.'")(citing Woloszyn, 396 F.3d at 321; Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001)).

The Third Circuit has further stated that while the factual scenarios elucidated in prior vulnerability-to-suicide claims "provide helpful guidance in determining whether a case meets the vulnerability to suicide standard, each case will present unique circumstances and should be considered on its own facts. A failure to track the precise contours of our prior caselaw should not, by itself, compel a conclusion that a plaintiff has failed to state a vulnerability to suicide claim." Palakovic, 854 F.3d at 231 (reversing district court's dismissal of

complaint where allegations did not describe, e.g., scenario where "defendants should have known that the prisoner was a suicide risk and failed to take necessary and available precautions to protect the prisoner from self-inflicted wounds," as discussed in Freedman, 853 F.2d at 1115 (citing Colburn I, 838 F.2d at 674)).

The proposed Amended Complaint describes a fairly unusual scenario, compared with much of the caselaw within this Circuit involving jail suicides. In many cases, plaintiffs adequately plead (or produce evidence sufficient to survive summary judgment) the decedent's particular vulnerability to suicide by reference to, e.g., positive answers to relevant medical intake questions, or otherwise obvious indicators of suicidality. See, e.g., Palakovic, 854 F.3d at 230 (fellow inmates nicknamed decedent "Suicide"); Colburn I, 838 F.2d at 670 (factual support for allegations that decedent was a suicide risk and that defendants had knew or should have known so where decedent had allegedly, inter alia, interacted with police the previous day after jumping from a window following an argument with her boyfriend). Comparatively, courts are less likely to find, however, deliberate indifference on the part of corrections officials, frequently finding no "more than mere negligence[,]" Freedman, 853 F.2d at 1117, or no unreasonable lapses or

omissions. See, e.g., Plasko v. City of Pottsville, 852 F. Supp. 1258, 1264 (E.D.Pa. 1994)("failure to take decedent's belt, absent circumstances indicating detainee's psychological needs, was at most only a negligent omission"); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 466 (3d Cir. 1989)(same, despite normal policy requiring belt removal); Hopson v. Cheltenham Twp., No. 90-0587, at *7 (E.D.Pa. 1990 WL 102883)(CO's "failure to perform timely cell-checks as required by the department policy does not amount to deliberate indifference, and can at worst be characterized as negligence" where CO skipped two 30-minute checks, leaving decedent unchecked for eighty minutes); Williams v. City of Lancaster, Pa., 639 F. Supp. 377, 383-84 (E.D.Pa. 1986)(failure to check inmates every 30 minutes, although against regulations, and "decision to do . . . paperwork" "perhaps ill-advised" but not evidence of "total indifference to decedent's safety"; "even if one check were missed on a regular basis, plaintiff has failed to show how that hour-long gap is anything more than negligence" as "brief departure from the jail regulations does not automatically impinge upon prisoners' constitutional rights"); Dimitris v. Lancaster Cty. Prison Bd., No. Civ. A. 00-3739, 2002 WL 32348283, at *5-*7 (E.D.Pa. June 7, 2002)(finding negligence rather than deliberate indifference); Mullin v. Balicki, No. 11-

247(MLC), 2016 WL 3021721, at *6 (D.N.J. May 25, 2016)("Mullin I")(no evidence showing deliberate indifference where individual defendant did not "deviate[] from [prison's] policies, i.e. act[] culpably, with respect to" decedent); Estate of Cills v. Kaftan, 105 F. Supp. 2d 391, 399-400 (D.N.J. 2000)(low-level employees' decision to remove decedent from suicide watch without consulting trained mental health professional not evidence of deliberate indifference but evidence that "Department's underlying suicide policy was flawed for not having a professional on staff to consult"). Cf. Counterman v. Warren Cty. Corr. Fac., No. 03-1974(SRC), 2005 WL 5368398, at *13 (D.N.J. Jan. 27, 2005)(collecting cases where absence of guard at post while inmate is assaulted held to amount only to negligence).

Courts have found the requisite allegations of deliberate indifference, e.g., where a defendant disregarded the "excessive risk" to the decedent's "health and safety" sufficient to constitute deliberate indifference where a defendant, despite believing the decedent should be assessed by a psychiatrist and knowing that the decedent never met with any psychologist or psychiatrist, and herself having no licenses or certifications, lowered the detainee's Suicide Watch Level. Aughenbaugh, 2013 WL 12293453 at *10. See also Palakovic, 854 F.3d at 228 (plaintiffs

stated a claim as to deliberate indifference in general <u>Estelle</u>

claim rather than failure-to-prevent-suicide claim where "the

defendants permitted [decedent, who ultimately committed

suicide]--with his fragile mental health condition and history

of self-harm and suicide attempts--to be repeatedly subjected to

the harsh and unforgiving confines of solitary confinement"

thereby taking the plaintiffs' claim "from the realm of mere

negligence to a potential claim of constitutional magnitude");

<u>Mullin II</u>, 875 F.3d at 147, 159 (reports that individual CO

responded to decedent's request to see "psych" with refusal and

suggestion that decedent "might as well kill himself" suggested

CO's "awareness of, and indifference to, [decedent's] condition"

supporting claim for liability under Eighth Amendment).[5]

---

[5] <u>Cf.</u> <u>Nami v. Fauver</u>, 82 F.3d 63, 67-68 (3d Cir. 1996)("It cannot
be wholly determined from the record whether in this case prison
officials actually displayed deliberate indifference.
Nonetheless, this complaint states that 'letters have been
written to the [administration] concerning all matters set forth
in the complaint. All requests for administrative remedies were
refused.' This suggests that the defendants were on actual
notice by plaintiffs' reports of rape, violence and the other
conditions alleged in their complaint. By itself, such notice
may not equal proof of deliberate indifference; nevertheless, it
directly contradicts the district court's tacit conclusion,
which has no support in the record, that plaintiffs could prove
no set of facts establishing deliberate indifference or
otherwise entitling them to relief. . . . Plaintiffs may be able
to allege in an amended complaint, for example, sufficient facts
to support a finding that some defendants displayed deliberate
indifference to certain harms, or that all officials were
deliberately indifferent to the possibility that the conditions

As to the first prong of the test, it appears undisputed that the SAC does not plead Ms. Allen's particular vulnerability to suicide, beyond the allegation that she ultimately did commit suicide. It does allege that she was undergoing opiate withdrawal, but this is not sufficient. See, e.g., Mullin I, 2016 WL 3021721 at *5 (no strong likelihood of suicide despite past suicide attempt); Colburn II, 946 F.2d at 1026-27 (court, on that record, "unwilling to equate intoxication on the part of a person taken into custody with 'a particular vulnerability to suicide'").

As to the second prong of the test, although the SAC does not currently so allege, the Court does discern some basis in the caselaw to support the proposition that Plaintiff could adequately allege that Loatman "should have known" of Ms. Allen's vulnerability, although she does not now do so. See Palakovic, 854 F.3d at 222-23, 226, 230-31 (Third Circuit has found custodians "to 'know' of a particular vulnerability to suicide . . . where 'they have had actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities'" [quoting Colburn II] and finding that "the prison diagnosed [the

_____

under which they housed the plaintiffs significantly increased the possibility of such well-known harms as prison rape.")

30

decedent] with an array of serious mental health issues and placed him on a mental health roster, making it quite reasonable to infer that prison officials had (or should have had) knowledge of those diagnoses"; decedent disclosed prior suicide attempts to prison officials, who "identified [him] as a 'suicide behavior risk' and rated him 'Stability Rating D,' diagnosed him with multiple, serious mental illnesses known to heighten the risk of self-harm, and placed him on the 'mental health roster.' [Plaintiffs] allege that all of this information was set forth in [decedent's] records, which the corrections officers and medical staff must have--or, at the very least, should have--reviewed when considering both his treatment and whether or not to repeatedly place him in solitary confinement. These facts, taken together, are sufficient to support a reasonable inference that prison officials and medical personnel knew or should have known of [decedent's] particular vulnerability to suicide"); Hopson, 1990 WL 102883 at *9 (genuine issue of material fact as to whether decedent was agitated or upset upon arrest and COs' observation of same, as well as whether police knew decedent was intoxicated and had been rejected by a loved one, coupled with proposed expert testimony that "jail suicides are occurring nationwide and not uncommon").

The Court notes, however, that it is with respect to the third prong that the SAC is the most plausibly-pled against Loatman. Unlike a failure to monitor her charges for an hour while other corrections officers were present, Williams v. City of Lancaster, 639 F. Supp. at 383-84; or the skipping of two thirty-minute checks, Hopson, 1990 WL 102883 at *7; Plaintiff alleges that Loatman left Ms. Allen unchecked for nearly five hours. The Court has no difficulty surmising that Plaintiff could, during the discovery process, elicit testimony establishing that Loatman was, in fact, subjectively aware of the reasons corrections officers are required to monitor inmates, that one of said reasons is suicide prevention, and, accordingly, present a question of fact that Loatman's failure to so monitor the inmates on A-Pod rose beyond "mere negligence" to "evidence[] an absence of any concern for the welfare of his or her charges." Woloszyn, 396 F.3d at 320.[6]

_____

[6] Cf. Middleton v. United States Federal Bureau of Prisons, 658 Fed. App'x 167, 171-72 (3d Cir. 2016)(discussing "negligent guard" theory regarding failure-to-protect claim under Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., where inmate in Pennsylvania prison was beaten for ten minutes while guard failed to monitor and was allegedly "lazy, inattentive, and negligent"; court noted that the Second Circuit, "distinguishing garden-variety human negligence from negligent acts involving an element of judgment or choice, noted that if an official was distracted, inattentive, or too lazy, that conduct would not fall within the discretionary function exception" of the FTCA (which precludes liability for "claims that are based on the exercise or performance or the failure to exercise or perform a

Similarly, the Court can envision, as a general matter, Plaintiff "demonstrat[ing] deliberate indifference by showing that the risk of harm [by suicide] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that the defendant[] must have known about the risk." Parkell, 833 F.3d at 335. However, the general, obvious baseline risk of inmate suicide seems not to have been sufficient to demonstrate the elements of deliberate indifference in these types of cases in the Third Circuit previously. The Court understands that, where the lapses in judgment that allegedly contributed to the suicide at issue are fairly minor or arguably so, such an approach is sensible and comports with the notion that mere negligence cannot constitute a constitutional violation. However, it seems unlikely that prison officials, as a matter of policy, could evince total indifference to the general possibility of inmate suicide simply because those

_____

discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused"(internal quotations omitted)) and quoted the Seventh Circuit when it stated "that where 'prison personnel violate a mandatory regulation, the [discretionary function] exception does not apply because there is no room for choice and the action will be contrary to policy.'[citing Keller v. United States., 771 F.3d 1021 (7th Cir. 2014)(further internal quotations omitted)]"; court ultimately stated that, while it did "not decide whether a 'negligent guard' theory can take some conduct outside the discretionary function exception, we also direct the District Court to consider whether such a theory would apply to this case").

officials are unaware (and do not have reason to know) of any individual inmate's particular vulnerability to suicide. <u>See</u>, <u>e.g.</u>, <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1068 (3d Cir. 1991)("In light of <u>Colburn I</u> and the related jurisprudence concerning the rights of pretrial detainees, I think that the basic standard that must be applied in determining whether the City breached a constitutional duty toward intoxicated and potentially suicidal detainees by means of a municipal policy or custom is that which plaintiff has attempted to meet: whether the City was deliberately indifferent to the serious medical needs of this class of detainees.").

The Court is also mindful of the fact that the "need for discovery before testing a complaint for factual sufficiency is particularly acute for civil rights plaintiffs, who often face informational disadvantages." <u>Alston v. Parker</u>, 363 F.3d 229, 233 n.6 (3d Cir. 2004)(citing <u>Colburn I</u>, 838 F.2d at 667). <u>See</u> <u>Martinez v. Warner</u>, No. 07-3213, 2008 WL 2331957, at *9 (E.D.Pa. June 5, 2008)(citing same sentence in <u>Alston</u> while assessing motion to dismiss under <u>Iqbal/Twombly</u> standard).[7]

---

[7]<u>See also</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)(pro se petitioner in § 1983 suit claimed physical injuries and deprivation of procedural due process rights after being placed in disciplinary solitary confinement; Court reversed District Court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6) because "[w]hatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as

While the SAC does not adequately state a claim against Loatman under the test for a vulnerability-to-suicide constitutional claims as expressed in Palakovic, the Court does not believe further amendment to be futile.

Accordingly, the Court will deny the motion to file the SAC and grant the motion to dismiss the FAC's constitutional claims against Loatman without prejudice, but will grant leave to Plaintiff to file a new motion for leave to amend, with a proposed Amended Complaint that addresses the deficiencies noted herein.[8]

**B. Third Amended Complaint to Add Defendant CFG and Motion for Sanctions**

Plaintiff seeks to file the TAC in order to add CFG as a defendant, claiming that "representatives and/or employees of CFG" were responsible for failing to properly screen and monitor Ms. Allen [TAC, Docket Item 81-2, ¶¶ 16, 37-39], exhibiting

those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence"); Fantone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015)(citing both Haines and Iqbal when assessing a complaint).
[8] Any proposed Amended Complaint is subject to the constraints of this Opinion and the obligation of pleading only such claims as are premised upon "factual contentions hav[ing] evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," as required by Rule 11(b)(3), together with the other provisions governing pleadings under Rule 11.

deliberate indifference and breaching their legal duties to her.
Accordingly, Plaintiff seeks to add CFG to her second, fourth,
fifth, sixth, and seventh claims for relief. [TAC ¶¶ 46-52, 59-
79.] She claims that leave to file the TAC should be granted
pursuant to Fed. R. Civ. P. 15(a) because there is no undue
delay, as "only a few months have passed from the time
Plaintiffs were permitted to file any amendments to the
Complaint in line with the Court's scheduling order"; because
"the amendment of the pleadings is not prejudicial to the
existing Defendants[,]" none of whom are subject to any
additional allegations; and because the TAC "contains actionable
claims against the same Defendants as in the original Complaint
and the First and Second Amended Complaints. Those claims are
not futile[.]" [Docket Item 81-1 at 3.]

Non-party CFG, by and through Attorney McClain, filed a
response in opposition. [Docket Item 82.] It argues that
amendment would, in fact, be futile because the TAC "violates
the Statute of Limitations." Id. at 7.

The Court finds CFG's arguments as to the statute of
limitations to be well-taken and will deny the motion for leave
to file the TAC on those grounds.

In New Jersey, the statute of limitations for personal
injury claims is two years. N.J.S.A. 2A:14-2. Here, Ms. Allen

36

passed away on March 22, 2014; accordingly, the limitations period expired on March 22, 2016.[9]

Although N.J.S.A. 2A:14-2 may be tolled if a plaintiff uses the New Jersey fictitious party rule in its pleadings before the expiration of the limitations period, see R. 4:26-4, and Plaintiff here did use the fictitious party rule to plead claims against several John Doe Corrections Officers [Docket Items 1 & 14], that rule is not available "if, through the use of diligence, [the plaintiff] should have known the defendant's identity prior to running of the statute of limitations." Mears v. Sandoz Pharms., Inc., 300 N.J. Super. 622, 629 (1997). The proposed new party, CFG, is a health care provider and is not within the Plaintiff's definition of the John Doe Corrections Officer defendants. The Court finds that the exercise of due diligence would have revealed the identity of CFG as early as November of 2015, when the Cumberland County defendants served initial disclosures including medical intake forms containing the name and/or logo of CFG (and Plaintiff used those disclosures to amend the complaint to add Defendant Garcia by name, as well as additional named corrections officers). Amendment at that time would have been within the statute of

_____

[9] This period also applies to Plaintiff's constitutional claims. See Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993).

limitations period. Alternatively, Plaintiff's counsel has
sought to add CFG as a defendant in parallel litigation for
another jail suicide case at the Cumberland County Jail as early
as November 15, 2016 [Estate of Lewis v. Cumberland County, No.
1:16-cv-03503, Docket Item 18], and in two other parallel cases,
in December of 2016 [Estate of Watson v. Cumberland County, No.
1:16-cv-06578, Docket Item 19; Estate of Hennis v. Cumberland
County, No. 1:16-cv-04216, Docket Item 23], after additional
rounds of disclosures suggesting CFG's connection to the events
at issue in this matter. While moving for leave to amend to add
CFG in the instant case in December of 2016 would have been
outside the limitations period, Plaintiff would have been free
to argue, e.g., that the statute should be tolled pursuant to
the discovery rule, or a similar equitable argument. However,
the Court can discern no basis for Plaintiff's counsel's failure
to request leave of the Court to add CFG as a defendant to this
action for another six months, nor a basis to allow for tolling
of the statute of limitations period and, accordingly, cannot
say that there was no undue delay.

For those reasons, the Court will deny the motion to file
the Third Amended Complaint adding CFG as a defendant. This
action against CFG would be futile as it is time-barred.

Finally, Defendant Garcia filed a Motion for Sanctions, stating that Plaintiff's Motion for Leave to file the TAC was frivolous under Fed. R. Civ. P. 11. [Docket Item 89.] While the Motion was not well-taken and will not be granted, the Court does not find that its filing was "wasteful" or "abusive," see Cohen v. Kurtzman, 45 F. Supp. 2d 423, 435 (D.N.J. 1999) and will, as is within its discretion, deny the motion for sanctions.

**IV. CONCLUSION**

For the reasons discussed herein, Plaintiff's motion to file the Second Amended Complaint will be denied without prejudice; Loatman's cross-motion to dismiss the First Amended Complaint as to her will be granted; Plaintiff's motion to file the Third Amended Complaint to add claims against a new Defendant, CFG, will be denied; and Defendant Garcia's motion for sanctions will be denied. Plaintiff may file a new Motion for Leave to File an Amended Complaint addressing the deficiencies noted herein with respect to constitutional claims against Defendant CO Loatman within thirty (30) days from the date of entry of this Opinion and Order. The accompanying Order will be entered.

**March 13, 2018**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      U.S. District Judge