## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

THE ESTATE OF ALISSA MARIE ALLEN,     :
et. al.,     :
    :     Civ. No. 15-6273 (RBK) (AMD)
          Plaintiffs,     :
    :
      v.     :     **OPINION**
    :
CUMBERLAND COUNTY, et al.,     :
    :
          Defendants.     :
_____ :

**ROBERT B. KUGLER, U.S.D.J.**

This matter comes before the Court by way of Plaintiffs, the Estate of Alissa Marie Allen by and through its administrator, Christine Allen, and Christine Allen in her own right's (collectively "Plaintiff") Fourth Amended Complaint, asserting claims under 42 U.S.C. § 1983, and related state law claims. (ECF No. 161). Presently before the Court are the County Defendants' motion for summary judgment (ECF No. 185), Defendant Garcia's motion for summary judgment (ECF No. 184), Defendant Loatman's motion for summary judgment (ECF No. 179), and Plaintiff's motion for summary judgment (ECF No. 180). The parties filed their respective oppositions (ECF Nos. 190, 191, 193, 194, 195, 196), and all parties, with the exception of Plaintiff, filed replies (ECF Nos. 197, 198, 199). For the reasons set forth below, the Court will grant Defendants' motions for summary judgment and deny Plaintiff's motion for summary judgment.

## I.      BACKGROUND

As the parties are intimately familiar with the facts of this case, and because the Court has already set forth the background of this matter in earlier Opinions (ECF No. 83, 124, 158), the Court will only state those facts necessary to address the instant motions.

This case arises from the suicide of Alissa Allen ("Ms. Allen"), during her pretrial detention at the Cumberland County Jail.  On March 20, 2015, Ms. Allen underwent an intake screening at the jail with Defendant Serrano.  According to Defendant Serrano, Ms. Allen did not appear despondent, exhibit any bizarre behavior, appear to be under the influence of drugs, was experiencing any pain, or was otherwise injured.  She also advised that she had no physical, mental, or developmental disabilities, had never been sexually victimized, and did not feel vulnerable to sexual abuse.

Ms. Allen did appear nervous and expressed to Defendant Serrano that she was scared to be in jail and wished to speak to her mother.  Defendant Serrano advised that he had to complete the intake process but would then give her as many calls as she needed.  At which point, Ms. Allen calmed down somewhat and thanked Defendant Serrano.  Defendant Serrano allowed Ms. Allen to make approximately eight to ten phone calls, primarily to her mother, who did not answer the phone.  Ms. Allen did report that she was using 20 to 30 bags of heroin daily, and as a result, staff placed her on withdrawal protocol including hydration.

Ms. Allen then underwent a mental health screening with a CFG Health Systems, LLC ("CFG") intake nurse, Defendant Garcia.  At the screening, Ms. Allen denied having any thoughts or plans to commit suicide, prior suicide attempts, mental health issues, or psychiatric history.  Ms. Allen denied having a significant loss within the last six months, worrying about any major problems other than her legal situation, or having any family history of suicide.  She also denied holding a position of respect within the community, or feeling embarrassment, shame, helplessness or hopelessness.  Nor did Ms. Allen express signs of crying or emotional flatness, or appear overly anxious, afraid, or angry.

Additionally, Ms. Allen did not appear to be under the influence of alcohol or drugs, and was neat, alert, clean, oriented, and conducted herself appropriately. Ms. Allen did, however, repeat that she was consuming 20 to 30 bags of heroin daily. Defendant Garcia concluded that there were no mental health problems at the time but noted Ms. Allen's potential withdrawal from heroin.

Ms. Allen began withdrawal and hydration protocol during which staff administered hydration therapy and provided her with a number of medications for withdrawal management. When an inmate is under drug withdrawal protocol, staff ask a number of questions to those inmates when documenting their vital signs.

At the first documentation on that same day, Ms. Allen did not complain of vomiting, sweats, nausea, or other symptoms associated with withdrawal. Further, Ms. Allen did not express difficulty adjusting to the jail or request to speak with a counselor. Nor did Ms. Allen express feelings of hopelessness, or appear withdrawn, depressed, or anxious. She also denied having thoughts about hurting herself.

The next day, on March 21, 2015, staff recorded Ms. Allen's responses and demeanor, which were the same as the prior day. Based on those responses, staff did not issue a mental health referral.

On March 22, 2015, Defendant Loatman was the officer in charge of monitoring Ms. Allen's area of the jail from 1:00 a.m. to 8:00 a.m. Policies required Defendant Loatman to conduct a round of cell checks every thirty minutes, and each round would take approximately five minutes to complete. Further, she testified that she was aware of the cell check policy, and that supervisors never told her it would be acceptable to skip any of the required checks. Defendant Loatman completed a cell check round at 12:40 a.m. or 12:45 a.m.

After completing her first round, Defendant Loatman remained sitting at her desk until 5:00 a.m., with the exception of a five to ten-minute break. According to Defendant Loatman, because it was quiet and everyone was asleep, she disregarded the thirty-minute cell check policy. At around 5:00 a.m., Defendant Loatman left her desk to retrieve the diabetic inmates and escort them to the medical unit.

Once at the medical unit, staff advised Defendant Loatman that Ms. Allen required hydration. At approximately 5:30 a.m., Defendant Loatman went to retrieve Ms. Allen and discovered that Ms. Allen was deceased, with a shirt tied in a knot around her neck with the other end tied to the grates surrounding the window. Defendant Loatman called for emergency assistance, untied Ms. Allen, and a nurse performed CPR until emergency rescue workers arrived. Ms. Allen was pronounced dead on March 22, 2015, as a result of suicide by hanging, but there does not appear to be evidence of her approximate time of death.

Defendant Loatman had never received a disciplinary charge prior to Ms. Allen's death, but received a charge due to these events. The charging document alleged that Defendant Loatman had not physically or visually checked on Ms. Allen for four hours and fifty minutes. The jail suspended Defendant Loatman for twenty days as a result of the charge, and she did not file an appeal.

During discovery in this case, the parties deposed Ms. Allen's loved ones. By all accounts, Ms. Allen "loved life." (ECF No. 184-2, at ¶¶ 85–134). To their knowledge, Ms. Allen did not have a history of suicide attempts, never had mental health treatment, and believed that Ms. Allen was not a suicide risk. In fact, many testified that they did not believe Ms. Allen committed suicide.

As discussed in the Court's earlier Opinions, Nurse Garcia filed a motion for partial summary judgment with regard to Plaintiff's failure to serve a proper affidavit of merit. (ECF No. 42).  The Court granted that motion and dismissed the professional negligence claims against Defendant Garcia. (ECF No. 83).

Thereafter, Plaintiff sought, among other things, to amend her Complaint to add claims against CFG, and the Court denied leave to amend on statute of limitations grounds. (ECF No. 124, at 35–38).  Ultimately, Plaintiff filed a Fourth Amended Complaint against Defendants raising § 1983 and related state law claims. (ECF No. 161).  At the conclusion of discovery, all parties filed their respective motions for summary judgment.

## II.      STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton*, 572 U.S. at 657.  The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that

may show that genuine issues of material fact exist).  The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor.  *Anderson,* 477 U.S. at 257.  Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment.  *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990).

Additionally, when plaintiffs move for summary judgment, they bear a heavier burden. *See, e.g.*, *Dunkin Donuts Franchising LLC v. Claudia III, LLC*, No. 14-2293, 2015 WL 4243534, at *1 (E.D. Pa. July 14, 2015).  As plaintiffs have the burden of proof at trial, they must produce on a motion for summary judgment, "evidence satisfying each element of [their] claims and show there is 'no genuine dispute as to any material fact that would prevent the court from rendering judgment in the movant's favor.'" *Id.*  (quoting *Moore's Federal Practice* § 56.40(1)).  Indeed, a plaintiff's evidence "must be so powerful that no reasonable jury would be free to disbelieve it." (*Id.*).

### III.    DISCUSSION

#### A.  Plaintiff's Failures to Comply with Rule 56(c)(1)(A)

Before discussing the merits of these motions, the Court must address the deficiencies within Plaintiff's oppositions, which complicate the task before the Court and act to Plaintiff's great detriment.  Under Rule 56(c)(1)(A), any party asserting that a fact is or is not in dispute must support that assertion by "*citing* to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." (emphasis added).

When parties fail to follow Rule 56, a court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

Local Civil Rule 56.1(a) supplements the federal rule and provides in relevant part:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and *citing to the affidavits and other documents submitted in connection with the motion*; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

(emphasis added).

Additionally, an "opponent may . . . furnish a supplemental statement of disputed material facts, in separately numbered paragraphs *citing to the affidavits and other documents submitted in connection with the motion,* if necessary to substantiate the factual basis for opposition." *Id*. (emphasis added).

Stated differently, expressing a general disagreement "without identifying the facts disputed *and* without [citing] to evidence in the record that raises an issue of fact regarding that point, is insufficient to survive summary judgment." *Malik v. Hannah*, 799 F. Supp. 2d 355, 358 (D.N.J. 2011) (emphasis added); *see, e.g.*, *Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.,* No. 12–3427, 2014 WL 268652, at *5 n. 4 (D.N.J. Jan. 23, 2014) (admonishing the defendant for falsely claiming that facts were in dispute, and noting that "any statement that is not explicitly denied with a proper citation to the record in a responsive Rule 56.1 statement is deemed

admitted."); *Walters v. Carson*, No. 11–6545, 2013 WL 6734257, at *9 n.11 (D.N.J. Dec.19, 2013).

With those principles in mind, Plaintiff's responsive statements of material facts only deny or partially deny: 11 of 189 of the County's paragraphs; 3 of 99 of Defendant Loatman's paragraphs; and 2 of 144 of Defendant Garcia's paragraphs, with *any* citations to the record. (*See* ECF No. 194, at ¶¶ 34, 65; ECF No. 195, at ¶¶ 4, 10, 16; ECF No. 196, at ¶¶ 15, 20, 31, 32, 35, 36, 39, 55, 63, 66, 80).

The rest of Plaintiff's denials, "attempt[] to dispute a fact asserted and supported from the record by Defendants, without supporting [her] position with a citation to the record." *See Soto-Muniz v. Corizon, Inc.*, No. 10-3617, 2015 WL 1034477, at *3 n.3 (D.N.J. Mar. 10, 2015), *aff'd sub nom. Soto-Muniz v. Martin*, 665 F. App'x 226 (3d Cir. 2016).

Moreover, in many of the remaining paragraphs in "dispute," Plaintiff is "attempting to deny a fact not actually asserted by Defendants" or mischaracterizes the cited evidence. *Id.* In such instances, Plaintiff submits a denial and then cites to, at best,[1] supplemental related information. (*See* ECF No. 194, at ¶ 65; ECF No. 195, at ¶ 10; ECF No. 196, at ¶¶ 15, 20, 35, 80).

Although the Court will consider some of this supplemental information and other items submitted "by way of further answer," such evidence is not sufficient to dispute their respective facts in question. *See, e.g.*, *Soto-Muniz*, 2015 WL 1034477, at *3, *Juster*, 2014 WL 268652, at *5 n. 4. Accordingly, the Court will regard nearly the entirety of the Defendants' statements of facts as undisputed for the purpose of this Opinion.

---

[1] Indeed, in one instance, (ECF No. 196, at ¶ 20), Plaintiff cites to deposition testimony from a person who does not appear to be a witness in this case, was not deposed in this case, and did not provide testimony in connection with this litigation.

Additionally, as Plaintiff did not file a supplemental statement of facts along with any of her opposition briefs, the Court will only consider the alleged facts in her briefs that have proper citations to the record. *See* Fed. R. Civ. P. 56(c)(1)(A), 56(e); *Malik*, 799 F. Supp. 2d at 358. Curiously, some Defendants emphasized these failures in their Reply, and yet Plaintiff appears to have made no effort to remedy these deficiencies.  (ECF No. 199, at 4–6).

**B.   Claims Against Defendants Serrano, Puglise, Ortiz, Fowlkes, Santos, Johnson, and John Doe Officers.**

Next, because Plaintiff concedes that it is appropriate to do so, the Court will grant summary judgment as to the claims against Defendants Serrano, Puglise, Ortiz, Fowlkes, Santos, Johnson, and the John Doe Officers at this time. (ECF No. 196-2, at 10, 14).

**C.   Municipal Liability Under § 1983 and Claims Against Defendants Loatsman and Garcia**

Turning then to the merits, Cumberland County argues that summary judgment is appropriate because Plaintiff has failed to support her claims against a local government entity under § 1983.

To succeed on a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Com. of Pa.,* 36 F.3d 1250, 1255–56 (3d. Cir. 1994).  The Supreme Court has established that § 1983's definition of "person" includes municipalities and other local government entities. *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 690 (1978).

A plaintiff may not, however, hold a local government unit "liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014).  To hold such an entity liable under § 1983, plaintiffs must demonstrate

that a local government unit adopted a policy or custom and that such policy or custom had been "the moving force" behind the deprivation of their constitutional rights. *See Monell*, 436 U.S. at 694.

Municipal policy generally requires that a local governing body's officers officially adopt and promulgate a "statement, ordinance, regulation, or decision." *Id.* at 690.  A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691.

Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" under § 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

The "first inquiry in any case alleging municipal liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton,* 489 U.S. at 385.  Plaintiff contends[2] that Defendants Loatman and Garcia committed the underlying constitutional violations.

---

[2] It appears that Plaintiff initially alleged that Defendant Serrano also committed an underlying violation but has since agreed that summary judgment is appropriate as to Defendant Serrano. (ECF No. 196-2, at 10, 14).  In any event, the Court would have granted summary judgment in favor of Defendant Serrano, for substantially the same reasons discussed below.

### 1. Deliberate Indifference Resulting in Suicide

To state a Fourteenth Amendment[3] claim for deliberate indifference resulting in suicide, a plaintiff must show: "(1) that the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility," that the individual would attempt suicide; "(2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." *Palakovic v. Wetzel*, 854 F.3d 209, 223 (3d Cir. 2017). Cumberland County may satisfy its burden for summary judgment by showing "that there is an absence of evidence to support the nonmoving party's case," and does so here, with proper citations to the record. (ECF No. 185-1); *see Celotex*, 477 U.S. at 325.

With those principles in mind, Plaintiff has failed to show that any official committed an underlying Fourteenth Amendment violation. Specifically, Plaintiff fails to offer sufficient evidence as to Ms. Allen's particular vulnerability to suicide.

In determining whether a person had a particular vulnerability to suicide, the inquiry "speaks to the degree of risk inherent in the detainee's condition." *Palakovic*, 854 F.3d at 222 (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1024 (3d Cir. 1991)). The burden is a heavy one, and a "strong likelihood" of suicide "must be so obvious that a lay person would easily recognize the necessity for preventative action." *Id*. (internal quotation marks omitted). For example, in *Palakovic*, the Third Circuit reasoned that:

---

[3] From the papers, it appears that Ms. Allen was a pretrial detainee at the time of the events in question. To the extent Plaintiff seeks to raise corresponding Eighth Amendment deliberate indifference claims, the Court will dismiss those claims as they only apply to inmates who have received their conviction and sentence.

> [w]hen a mentally ill, depressed person has attempted to kill himself multiple times, has engaged in self-harm, declares he has been thinking about killing and harming himself, and has made an actual plan of how he would carry out his own suicide, it cannot be said as a matter of law that the risk of suicide is nothing more than a 'mere possibility.' Brandon's suicidal propensities were so readily apparent that his fellow inmates nicknamed him 'Suicide.'

*Id.* at 230 (quoting *Woloszyn v. County of Lawrence*, 396 F.3d 314, 322 (3d Cir. 2005) (citations omitted).

In the present case, Plaintiff argues that Ms. Allen had a particular vulnerability to suicide because she was "addicted to heroin and alcohol, scared and nervous [,] . . . and desperate to get in touch with her mother." (ECF No. 195-2, at 6). Additionally, one of Plaintiff's experts opined that "opiate addiction, substantial alcohol use and the likelihood of some degree of withdrawal syndrome represent three independent predictors of elevated suicide risk." (*Id.*; ECF No. 180, at 15). Plaintiff also implies, without citing to evidence, that inmates on withdrawal and hydration protocol, like Ms. Allen, have an increased risk of suicide.

The Third Circuit, however, "has clearly and repeatedly held that the increased risk of suicide due to intoxication or drug withdrawal cannot support a deliberate indifference claim." *See, e.g.*, *Carroll v. Lancaster Cty.*, 301 F. Supp. 3d 486, 497 (E.D. Pa. 2018) (quoting *Ferencz* v. *Medlock*, 2014 WL 3339639, *4 (E.D. Pa. July 8, 2014) (citing *Woloszyn*, 396 F.3d at 322–23; *Colburn II*, 946 F.2d at 1026–27)); *see also Wargo v. Schuylkill County*, 348 F. App'x 756 (3d Cir. 2009) (affirming summary judgment where a district court found that signs of drug addiction and withdrawal did not demonstrate particular vulnerability to suicide).

Plaintiff also refers to the notion that Ms. Allen was generally scared and nervous about being in jail, but generalized distress is insufficient to demonstrate a particular vulnerability to suicide. *See Woloszyn*, 396 F.3d at 316–17. Indeed, in *Woloszyn*, the Third Circuit considered a

case that involved a decedent who expressed remorse, seemed distant, was unresponsive to questioning, suggested that he "failed as a father and a person," indicated that he was still intoxicated due to a 24-hour drug and alcohol binge, during which he used "ever drug possible from alcohol to heroin, to crack cocaine and acid," and was placed on withdrawal monitoring. *Id.* at 317.

Nevertheless, even those circumstances, "without more," were insufficient to show a particular vulnerability to suicide. *Id.* at 323.  The Third Circuit held that the circumstances failed to show "a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Woloszyn*, 396 F.3d at 323; *Nealman v. Maben*, No. 1:15-1579, 2019 WL 4781348, at *6 (M.D. Pa. Sept. 30, 2019).

Plaintiff also disputes, without citing to evidence, the answers listed on Ms. Allen's mental health intake form. (ECF No. 194, at ¶¶ 56–64).  Defendant Garcia conducted that intake and reported Ms. Allen's history of substance abuse, but she denied having any thoughts or plans to commit suicide, prior suicide attempts, mental health issues, psychiatric history, or any other indicators of suicide risk.  (ECF No. 184-10, at ¶ 8).  Plaintiff seeks to dispute these responses with general denials, alleging that Plaintiff does "not know what Ms. Allen said, how she appeared or what she felt. As there is no video of the intake process, we only have what was documented by RN Amber Garcia." (ECF No. 194, at 4–5).  Once again, however, Plaintiff must provide *evidence* to create a genuine issue of material fact.

Instead, by the accounts of Ms. Allen's loved ones, she "loved life." (ECF No. 184-2, at ¶¶ 85–134).  To their knowledge, Ms. Allen did not have a history of suicide attempts, never had mental health treatment, and believed that she was not a suicide risk.  (*Id.*).  In fact, many testified that they did not believe Ms. Allen committed suicide. (*Id.*).

Similarly, in her Fourth Amended Complaint, Plaintiff alleges that inmates who "were on withdrawal protocol, including hydration, are at a high risk for suicide," but offers no evidence to support that allegation. (ECF No. 129-1, at ¶ 39).  Indeed, this Court allowed Plaintiff's amended deliberate indifference claims to proceed *because* of this critical allegation. (ECF No. 158, at 8).

Ultimately, Plaintiff does not present evidence of the type and severity sufficient to establish that Ms. Allen was particularly vulnerable to suicide.  If Ms. Allen had a history of mental illness, suicide attempts, self-harm, expressed an interest in suicide or self-harm, or other indicators of suicide risk, Plaintiff did not provide that evidence to the Court.  Nor does the Court have any obligation "to scour the entire record to find a factual dispute." *E.g.*, *Dawley v. Erie Indemnity Co*., 100 F. App'x 877, 881 (3d Cir. 2004).

Consequently, without more, Ms. Allen's opiate addiction, withdrawal therefrom, and general fear and anxiety about being in jail are insufficient to establish that she was "particularly vulnerable" to suicide.  As a result, Plaintiff cannot prove that Defendants Loatman or Garcia "should have known" of Ms. Allen's particular vulnerability or that they "acted with reckless or deliberate indifference" towards that vulnerability. *See Palakovic*, 854 F.3d at 223.

Accordingly, assuming *arguendo*, that Plaintiff has evidence to support the existence of a municipal policy or custom, she fails to raise evidence of an underlying constitutional deprivation. Without an underlying violation, Plaintiff cannot demonstrate a "direct causal link" between the policy or custom and Ms. Allen's death. *See Canton*, 489 U.S. at 385.

### 2.  Policy or Custom

That said, Plaintiff also fails to offer competent evidence regarding Cumberland County's customs and policies.  In her brief, Plaintiff suggests that the County failed to learn from prior jail

14

suicides and failed to properly train its employees, but again fails to cite to anything relevant in the record. (ECF No. 196-2, at 8–10).

In fact, Plaintiff offers no evidence of *prior* similar constitutional violations in her responsive statement of material facts, citing only to *Estate of Watson by & through Lloyd v. Cumberland Cty.*, No. 16-6578, 2018 WL 1064208, at *1 (D.N.J. Feb. 27, 2018), which involved a suicide at the jail over a year *after* Ms. Allen's death. (ECF No. 196, at ¶ 67).

In her brief, Plaintiff also mentions the suicides of Robert Lewis and David Hennis, but again, does not cite to any evidence regarding these individuals. (ECF No. 196-2, at 9). Despite those failures, the Court takes judicial notice that the suicide of Mr. Lewis occurred approximately seven months *after* Ms. Allen's death. *See Estate of Lewis v. Cumberland Cty.*, No. 6-3503, 2019 WL 7047220, at *1 (D.N.J. Dec. 23, 2019).

The Court also takes judicial notice of the *Hennis* case, which *did* involve a suicide at the jail before Ms. Allen's death. This Court, however, granted summary judgment in favor of the defendants in that case, because the plaintiff failed to provide sufficient evidence of an underlying constitutional violation. *See Estate of Hennis v. Balicki*, No. 16-4216, 2019 WL 7047205, at *3–7 (D.N.J. Dec. 23, 2019). In any event, the "record is devoid of any evidence pertaining to the similarities" between the suicides of Ms. Allen and Mr. Hennis.[4] *Cf. Watson*, 2020 WL 104068, at *9.

---

[4] Plaintiff alleges that an expert, Tracy Reed, testified as to an intake issue relevant to both Mr. Hennis and Ms. Allen. (ECF 196-2, at 8–9; ECF 180, at ¶¶ 9, 10 12). Setting aside the, at times, mischaracterizations of the cited testimony, Ms. Reed *is not an expert in this case*, did not testify in connection with this case, and her deposition is not part of discovery in this matter. (*See* ECF No. 193-2, at 3–4). Although the County identified Ms. Reed as a potential expert and had used her as an expert in other jail suicide cases, it ultimately selected a different expert in this case.

As to the alleged training failures, Plaintiff only offers evidence[5] regarding a failure to provide CPR training. (ECF No. 196, at ¶¶ 31, 32, 36; ECF No. 196-2, at 8–10).  Plaintiff, however, fails to explain or offer evidence as to how CPR training impacts this case, *i.e.*, whether poor CPR training contributed to Ms. Allen's death.

Moreover, although Plaintiff generally maintains that there was inadequate suicide prevention training, Plaintiff fails to identify any "specific training not provided that could reasonably be expected to prevent the suicide that occurred." *Joines v. Twp. of Ridley*, 229 F. App'x 161, 163 (3d Cir. 2007). "It is not enough for Plaintiff to show that the [County's] 'employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury.'" *Id*. (quoting *Colburn II*, 946 F.2d at 1029–30). Plaintiff simply does not explain how the "risk reduction associated with [a] proposed training is so great and so obvious that the failure . . . to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives." *Id*.

It is possible that Plaintiff possesses the information to rebut these conclusions somewhere within the thousands of pages of discovery in this case, but once again, Plaintiff has not presented that information to the Court.  Accordingly, the Court will grant summary judgment in favor of the County as to Plaintiff's *Monell* claim.

---

Indeed, as Magistrate Judge Donio held during a deposition, "you can't adopt [Ms. Reed's] opinion in those other cases for this case," and that Ms. Reed is "not a testifying expert" in this case. (ECF No. 193-2, at 4, 43:7-16).

[5] Plaintiff alleges that the County failed to train officers on suicide prevention and on proper intake procedures but cites only to the entirety of Ms. Reed's 445-page expert deposition, who as discussed above, is not an expert in this case. (ECF No. 196-2, at 8–9; *see supra* n.4).  Even if Ms. Reed's deposition were admissible, the Court will not scour the record on Plaintiff's behalf to attempt to create a genuine issue of fact.

Additionally, because the New Jersey Legislature modeled the New Jersey Civil Rights Act ("NJCRA") after 42 U.S.C. § 1983 and created a private cause of action for violations of civil rights under either the United States or New Jersey Constitutions, courts interpret NJCRA claims "analogously to § 1983." *Fisher v. Pratt*, No. 19-273, 2019 WL 519569, at *5 (D.N.J. Feb. 11, 2019).  Consequently, the Court will grant summary judgment on Plaintiff's corresponding NJCRA claims against the County.

### 3.  Claim Against Garcia and Loatman

Returning then to Defendants Garcia and Loatman, as discussed above, without evidence of Ms. Allen's "particular vulnerability to suicide," Plaintiff cannot prove that Defendants Loatman or Garcia "should have known" of Ms. Allen's particular vulnerability or that they "acted with reckless or deliberate indifference" towards that vulnerability. *See Palakovic*, 854 F.3d at 223.

Without more, even assuming that Defendant Garcia's mental health intake was deficient, or that Defendant Loatman disregarded her duty to conduct cell checks, they could not have been "deliberately indifferent" within the framework of *Palakovic*. *See id.*  Accordingly, the Court will grant summary judgment in favor of Defendants Garcia and Loatman as to Plaintiff's § 1983 claims and corresponding NJCRA claims.

### D.  Claims Against Warden Balicki

Next, Defendant Balicki argues that Plaintiff fails to raise evidence to support a Fourteenth Amendment deliberate indifference claim against him.  The Court has reviewed the submissions and finds that Defendant Balicki has met his threshold burden to show "that there is an absence of evidence to support the [Plaintiff]'s case," with proper citations to the record. *See Celotex*, 477 U.S. at 325.

As a general rule, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell,* 436 U.S. at 691 (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel,* 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

Instead, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates.  First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, Plaintiff alleges that Defendant Balicki maintained a policy, practice, or custom, which involved failing to properly train his officers "on Suicide Prevention, CPR, and basic functions such as filling out intake forms" and failing to ensure that they understood existing policies and procedures. (ECF No. 196-2, at 8–9).

As discussed above, however, Plaintiff has failed to provide competent evidence to show that any subordinate committed a constitutional violation.  Without evidence of an underlying

constitutional violation, Plaintiff cannot establish the requisite causal link to maintain an action for supervisory liability. *See, e.g.*, *Luzerne*, 372 F.3d at 586.

Once again, if Plaintiff possesses evidence to rebut these conclusions, she has failed to provide such evidence in accordance with Rule 56(c)(1)(A) and Local Rule 56.1(a).  Accordingly, the Court will grant summary judgment in favor of Defendant Balicki as to Plaintiff's § 1983 claims and corresponding NJCRA claims.

### E.  Remaining State Law Claims Against the County Defendants

Cumberland County and Defendant Balicki ("County Defendants") contend that Plaintiff has failed to raise evidence in support of her negligence claims.  The Court has reviewed the submissions and finds that the County Defendants have met their burden to show "that there is an absence of evidence to support" Plaintiff's negligence claims. *See Celotex*, 477 U.S. at 325.

To sustain a negligence claim, Plaintiff must raise evidence to establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate causation, and (4) actual damages. *Townsend v. Pierre*, 221 N.J. 36, 51 (2015).

Assuming *arguendo*, that the County Defendants had a duty to keep Ms. Allen "safe and secure at the jail" and then breached that duty through various failures to train, Plaintiff fails to present sufficient evidence of a "causal connection to that alleged breach and injury." *See Watson*, 2020 WL 104068, at *10.

"The first and most basic concept . . . within proximate cause is that of causation in fact." *Braboy v. United States*, No. 16-3105, 2018 WL 2002789, at *6 (D.N.J. Apr. 30, 2018).  "Cause in fact is sometimes referred to as 'but for' causation.  In the routine tort case, the law requires proof that the result complained of probably would not have occurred 'but for' the negligent

conduct of the defendant." *Id.* (quoting *Conklin v. Hannoch Weisman*, 145 N.J. 395, 417 (1996)) (internal quotation marks omitted).

A plaintiff must prove, by a preponderance of the evidence, "that the negligent conduct of the defendant was a cause in fact of the injury." *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 74 (3d Cir. 1996) (internal quotation marks omitted); *Galloway v. United States*, No. 14-06372, 2017 WL 5172393, at *4 (D.N.J. Nov. 8, 2017)("For a plaintiff to show proximate cause, a defendant's conduct must be a cause-in-fact of the plaintiff's injury, and the plaintiff must prove this fact by a preponderance of the evidence.").

With those principles in mind, the two County employees at issue are Defendant Serrano who had done Ms. Allen's initial intake, and Defendant Loatman who failed to conduct thirty-minute patrols on the night of the suicide.  As to Defendant Serrano, Plaintiff primarily contends that his lack of suicide prevention training "left him completely unprepared to care for and identify suicidal inmates." (ECF No. 196-2, at 7).  Plaintiff emphasizes Defendant Serrano's testimony that "unless a person told you they were suicidal there would be no way to tell" and that he should have noted Ms. Allen's nervousness about incarceration, her crying, and her several attempts to contact her mother. (ECF No. 196, at ¶¶ 80, 183).

Plaintiff then alleges, *without citing to evidence*, that because of this lack of training, Defendant Serrano was "unlikely to recognize an inmate displaying signs of withdrawal, signs of serious depression or signs of impending suicide." (ECF No. 196-2, at 7).  Even if true, staff ultimately discovered Ms. Allen's withdrawal, and there is no evidence that Ms. Allen exhibited any signs of depression, impending suicide, or how the unspecified training would have affected Defendant Serrano's conduct.

Indeed, one of Plaintiff's experts testified that even if Defendant Serrano had filled out all of his intake forms properly, it "would not have directly prevented [Ms. Allen's] suicide. It's simply evidence of the sloppiness and the failure to comply with existing policies." (ECF No. 185-1, at ¶ 181; ECF No. 185-4, at 70).

As to Defendant Loatman, the parties agree that: she received training as to the thirty-minute cell check policy; she was aware of that policy; she never received authorization to disregard that policy; and that she nevertheless chose to disregard that policy. (ECF No. 185-1, at ¶¶ 122–27). The parties also agree, that as a result, Defendant Loatman had not physically checked on Ms. Allen for approximately five hours. (*Id*. at ¶ 122).

Plaintiff, however, fails to raise evidence as to Ms. Allen's time of death, beyond the fact that it was at some point during an approximately five-hour period. Plaintiff's forensic expert testified that brain death could have occurred in as little as three to five minutes, or in the "best case scenario of a partial hanging," six to ten minutes. (ECF No. 199-25, at 48:15 to 53:21).

Another of Plaintiff's experts conceded, that even if Defendant Loatman had been conducting her checks every thirty minutes, he could not say that it was "more likely than not," that Defendant Loatman would have prevented Ms. Allen's suicide. (ECF No. 185-1, at ¶ 186; ECF No. 185-4, at 185:6–16 ("I can't say that it's more likely than not. There is a good likelihood. It's not a small percentage, but I don't think it's possible to put any kind of accurate odds or percentage on that because, again, there are a number of ways in which she could have prevented the suicide had she been making the checks.")).

Stated differently, without more specific evidence as to Ms. Allen's time of death, Plaintiff cannot prove that Defendant Loatman's failure to conduct thirty-minute checks was "more likely than not" a "cause in fact" of Ms. Allen's death. Ms. Allen's death could have occurred within

three to ten minutes, well within the gap between the thirty-minute cell checks.  Plaintiff could have perhaps, retained a statistician to calculate the odds of Defendant Loatman coming upon Ms. Allen in time to prevent her death, but Plaintiff did not do so in this case.

Alternatively, Plaintiff argues that Defendant Loatman's failures gave Ms. Allen the opportunity to commit suicide, *i.e.*, implying that Ms. Allen waited to see if anyone was conducting any further cell checks on the night in question.  In that scenario, Plaintiff has failed to explain how better training or policies could have prevented an employee from deliberately disregarding the relevant policy.

Consequently, even construing the evidence in the light most favorable to Plaintiff, she has failed to show by a preponderance, that the County Defendants' alleged training failures were a proximate cause of Ms. Allen's death.

Accordingly, for all of those reasons, the Court will grant summary judgment in favor of the County Defendants on Plaintiff's negligence claims.  Moreover, as Plaintiff has no remaining standalone claims,[6] the Court will dismiss her survivorship and wrongful death claims, as they are derivative claims. *See, e.g.*, *White v. City of Vineland*, No. 16-8308, 2018 WL 4583509, at *8 (D.N.J. Sept. 24, 2018) ("Claims of 'survivorship' or 'wrongful death' are 'derivative' and therefore must be dismissed when the underlying claims have been dismissed."); *Abramson v. Ritz-Carlton Hotel Co., LLC*, No. 09-3264, 2011 WL 2149454, at *5 (D.N.J. May 31, 2011), *aff'd*, 480 F. App'x 158 (3d Cir. 2012).

---

[6] In an earlier Opinion and Order, the Court had already dismissed the professional negligence claims against Defendant Garcia. (ECF Nos. 83, 84).  Further, although Plaintiff does not explicitly pursue individual negligence claims against Defendants Serrano and Loatman, (ECF No. 161, at ¶¶ 100–04), such claims would fail for the same reasons discussed above regarding proximate cause.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions for summary judgment, deny[7] Plaintiff's motion for summary judgment, and grant Defendant Loatman's motion to seal as unopposed.  An appropriate Order follows.

Dated:  June   23,  2020

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

---

[7] Evidently, because Plaintiff failed to raise evidence sufficient to survive summary judgment, she cannot prove that she is entitled to judgment as a matter of law.